# Nathaniel J. Austine

## *v.*

## The People of the State of Illinois.

1. Evidence—*written admission of guilt—made with a view to compromise—not admissible.* The written admission of a party accused of crime, made with a view to compromise the matter with the injured party, on the basis that he should not be prosecuted, is not admissible as evidence on indictment for such offense.

2. Same—*confessions—rule as to.* The rule is, a confession can never be received in evidence, when the prisoner has been influenced by any threat or promise.

3. SAME—*rule in criminal cases—not essentially different in civil cases.* In civil cases, what is confessed by way of compromise, or to buy peace, is never allowed to be taken advantage of and made evidence; and this rule is not essentially different in criminal cases.

4. SAME—*on examination of a prisoner—the precise language used should be taken down.* When resort is had to the examination of a prisoner, care should be taken that such examination is taken down in the precise words used by him, as the change of a word might change the character of the confession really made.

5. SAME—*copy of a confession—made from memory.* And it would be unsafe to permit a copy of such confession to be given in evidence, written out from mere recollection of the contents of the original, after a lapse of nearly two years.

6. SAME—*character of proof—to sustain charge of rape.* Where the offense charged is rape, the evidence to support it should not be of a questionable character, but sufficient to remove all reasonable doubt from the minds of the jury.

WRIT OF ERROR to the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

The opinion states the case.

Messrs. HANNEMAN, KRETZINGER & CRAIG, for the plaintiff in error.

Messrs. SANFORD, FROST & TUNNICLIFF, for the defendant in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an indictment, in the Circuit Court of Knox county, against Nathaniel J. Austine, for an assault with intent to commit a rape on one Mary Ann McDowell.

The only witness to prove the charge was the person alleged to have been assaulted, and a copy of an alleged written confession signed by the defendant.

The jury found the defendant guilty, and fixed the term of his imprisonment in the penitentiary at two years, and

judgment was rendered accordingly, a motion for a new trial having been overruled.

To reverse this judgment, the defendant prosecutes this writ of error.

The grounds of the motion for a new trial, were, among others, the misdirection of the court in admitting in evidence the copy of the confession of the defendant, and rejecting newly discovered evidence since the trial, accompanied by the affidavits of the witnesses setting out in full the facts to which they would testify. These are the points made here.

The assault was committed on the evening of the 27th of August, 1866, about dark, on a public highway, at a place within forty rods of the residence of the prosecutrix, and the complaint was made before Riley Lawrence, a justice of the peace, on the 26th of November following. On that day the defendant was arrested on a warrant issued by the justice, and he, having associated with him Woodford Pearce, another justice, were about to proceed to an examination of the charge. Esquire Pearce says, he wanted the thing dropped, on account of the standing of the parties. He says, "he then threw himself back on his dignity," and asked Esquire Lawrence to read the charge, and then he asked the accused if he was guilty or not guilty. The accused made no reply. "There was a breathless silence for some time." Pearce again asked him if he was guilty. Accused waited a little, and turned around and asked the prosecutrix why she came to his house the next day. He further says, no overtures of settlement were made to defendant at the time he first said he was guilty, but they were talking about dropping it. The prosecutrix asked him to write off an agreement, which he did. He then said he had not the original agreement, which he understood was lost, but he had a copy, not made from the original, but from memory.

The defendant objected, that such a copy was not evidence, but it was admitted. The terms of the settlement were, that defendant should admit the charge, and the prosecution should

be dropped.   It appears, from other testimony, that defendant was willing to sign anything, to drop the prosecution.

That this written admission was made by the defendant solely with a view to compromise the matter with the injured party, on the basis she would not prosecute, and that the matter was to be dropped, there can be no question.

At the February term, 1867, next thereafter, Esquire Pearce was foreman of the grand jury, when the prosecutrix presented this paper to that body, and the indictment followed.

The question is, should this confession, under the circumstances, have gone to the jury.

The rule is, a confession can never be received in evidence, when the prisoner has been influenced by any threat or promise, for the reason, the law can not measure the force of the influence used, or decide upon its effect on the mind of the prisoner, and therefore excludes it, if any degree of influence has been exerted.   2 Starkie's Ev. 36.   The evidence shows most clearly, this confession was forced by the hope and promise the prosecution should be dropped.   The inducement to confess was held out by the officiating magistrates—by persons in authority; and to avoid an accusation before a grand jury, and a public trial before the circuit court, a man of deficient stamina would confess, as this defendant was willing to do, to almost anything.

If, then, the original written confession could not be used against him, when so obtained, no argument is necessary to show a copy of such confession, written near two years after it was made, and from recollection only, could not be evidence. It does not even appear, that the confession, as written, was read over to the defendant before he signed it, or that he knew the contents of it.   It certainly was not his spontaneous act. He did not draw it up and sign it.

When resort is had to the examination of a prisoner, that examination should be taken down in the precise words used by him, and the language ought not to be changed, as the change of a word may change the character of the confession

really made. After a lapse of near two years, it would be unsafe to give a copy of such confession, written out from mere recollection of the contents of the original. In civil cases, what is confessed by way of compromise, or to buy peace, is never allowed to be taken advantage of, and made evidence, inasmuch as the admission may have been made, not from a consciousness of the validity or justice of the claim set up, but from a desire to avoid litigation. The rule is not essentially different in criminal cases. In such cases, a confession, as we have before said, can never be received in evidence, when the defendant has been influenced by any threat or promise. The promise in this case was, that the prosecution should be dropped, and it was dropped, on signing the paper. Under the circumstances then surrounding him, the defendant was willing to make any sort of admission, not supposing it would be used against him before a grand jury, or elsewhere. It was not made for the purposes of evidence, but to quiet the mind of the prosecutrix, and to put at rest reports injurious to her character. So to obtain an admission, and thus to use it, was a trap into which the defendant has fallen. We can not but believe, this copy, from memory, of an admission of guilt, had great weight with the jury in causing them to find the verdict; and given as it was, under the circumstances proved, it should have been excluded from the jury, and the case left to them on the testimony of the prosecutrix and other pertinent evidence.

The offense charged is a very serious one, easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent. The evidence to support it should not be of a questionable character, but sufficient to remove all reasonable doubt from the minds of the jury.

What would have been their finding in the absence of this written admission, it is impossible to know, but we must believe it had a powerful influence in inducing the conclusion to which the jury arrived.

For the reasons given, the judgment must be reversed and a new trial had.

We make no point on the refusal of the court to allow a new trial on the newly discovered evidence. One of the persons, Mrs. Lawrence, was a witness examined in the cause, and all she knew might have been brought out. The testimony of the other, Mary Selby, was cumulative only, upon that of Mrs. Lawrence.

The evidence to sustain the character of William Austine was also, in its nature, cumulative.

*Judgment reversed.*