THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNEST JOHNSON, Defendant-Appellant.

First District (4th Division)   No. 76-1608

Opinion filed February 8, 1979.

Ralph Ruebner and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County the defendant, Ernest Johnson, was found guilty of armed robbery. He was sentenced to a term of four to 12 years. On appeal the defendant argues

reversible error occurred when reference was made both in testimony and in closing arguments to an identification of the defendant by a person who did not testify at trial.

Cathy Andrelewicz, the victim of the robbery, testified for the State. On February 17, 1976, she was working as the cashier at the East End Pharmacy on Chicago Avenue in Oak Park, Illinois. At approximately 5 p.m. she was preparing to leave work and was at the front of the pharmacy near the cash register. A man entered the store carrying a rolled-up newspaper. He picked up a container of ice cream and placed it on the counter in front of Andrelewicz. She was ringing up the purchase when the man pulled a knife on her. The robber reached over the counter into the cash register and took four $5 bills and a stack of $1 bills, totalling about $40. He went to the door but then returned and removed a roll of pennies from the cash register. Andrelewicz testified that she was able to remember the amount and denominations of the cash because she had taken the extra money to the back room just before the robbery.

After the defendant left the store Andrelewicz pressed the alarm button. The police arrived shortly thereafter. She described the robber to Officer Gryncewicz as a male Negro, wearing a blue knit cap, a red jacket, tan pants and sunglasses. Andrelewicz testified the store lights were on during the robbery and that she had seen and talked with the robber five or six times in the past year when he had been in the store.

Shortly after the robbery Andrelewicz was taken to the Oak Park police station to view a lineup. She picked the defendant out of a four-man lineup as the man who had robbed the store. Andrelewicz also made an in-court identification of the defendant. On cross-examination Andrelewicz said it was not possible that she could be wrong in her identification of the defendant.

Gryncewicz testified that he and his partner, Officer Bucholz, answered the radio call which reported a robbery at the East End Pharmacy. After talking to Andrelewicz, Gryncewicz spoke to a Dr. David Rollins as he was leaving the store. Rollins told Gryncewicz that a man he saw leaving the pharmacy was wearing red gym shoes and carrying sunglasses. Gryncewicz and Bucholz then proceeded to an apartment building at 5940 W. Superior, located about half a block east of the pharmacy. Gryncewicz knocked on the door of the basement apartment three times before the door was opened by Jimmy Savania. Gryncewicz testified that as they entered the apartment they observed the defendant leaving the bathroom. The defendant was pulling up a pair of dark blue pants which were "much too large" for him. He was also wearing a pair of brown construction boots which were untied. The officers searched the "immediate vicinity" around the defendant's person but did not conduct a complete search for the clothing described by

Andrelewicz because they had no search warrant. Officer Bucholz recovered $46 from under a pile of clothing which was next to the defendant at the time of his arrest. The money consisted of four $5 bills and 26 $1 bills.

Savania was the first witness for the defense. He testified that he lives in the basement apartment where the defendant was arrested. Savania said that on the afternoon of the robbery he and the defendant and two others were drinking and gambling in his apartment. The defendant left the apartment at one point during the afternoon and returned four or five minutes later with a six-pack of beer. The defendant had been back in the apartment for about an hour before the police knocked on the door. Savania also testified that the defendant did not change his clothes before the police arrived. When the police arrived, the witness and the others hid the money with which they had been gambling. Savania testified that the police searched the entire apartment.

On cross-examination, and over the defendant's objection, the State asked Savania if the "man from the pharmacy" came to the apartment and identified anyone. Savania said the man from the pharmacy had identified the defendant.

The defendant testified on his own behalf. He described his brief absence from the apartment for the purpose of buying some beer. He also said he had been in the pharmacy before the date of the robbery but did not recall ever meeting or speaking with Andrelewicz. On cross-examination, the defendant said he had never been in the pharmacy before the date of the robbery. The defendant also testified that he was wearing blue pants the entire day of the robbery.

On rebuttal, Officer Stachura testified that at the time of the arrest the defendant said he had not left the apartment on the day of the crime.

In closing arguments the Assistant State's Attorney said the defendant had been identified not only by Andrelewicz but also by Rollins. The State apologized for Rollins' absence and said it was impossible to get him to come from Connecticut to testify. The defendant's objections to these comments were overruled.

On appeal, the defendant argues testimony that an out-of-court identification was made of the defendant as the offender was prejudicial hearsay when the person making the identification did not testify at trial, particularly where the single competent identification of the defendant was offset by alibi testimony and physical evidence which conflicted with the identification.

We must initially address the State's contention that the defendant waived any error in the introduction of the alleged hearsay by not objecting properly and, additionally, that the defendant's motion for a new trial did not preserve this issue for appeal purposes. The State calls

our attention to the objection made during trial to Officer Gryncewicz's testimony concerning Rollins' confrontation with the defendant. That objection was phrased in terms of "no foundation."

■■ Even if the objection to Gryncewicz's testimony was improperly worded, the defendant's later objection to Officer Bucholz's description of Rollins' identification was correct, in that the defense counsel stated "Objection, Your Honor, to the hearsay." Additionally, the defense timely objected to Savania's testimony concerning "the man from the pharmacy" and to the prosecutor's reference to Rollins' identification during his closing argument.

We also believe the defendant adequately preserved this issue for appeal purposes in his motion for a new trial. The defendant's written motion for a new trial stated, in part, "The State, over objection of the defense, questioned Officer Stachura, on redirect, as to an alleged identification of the defendant by a witness who was not present and who did not testify at trial." The defendant concedes that this point should have referred to Bucholz rather than Stachura, but submits that the point nevertheless adequately apprised the trial judge of the testimony to which he was objecting. The State contends this statement "does not set out the particular hearsay statements now claimed to be prejudicial and therefore these contentions are deemed waived."

■■ The general rule is that "failure to present a reviewable issue in a written motion for a new trial constitutes a waiver of the issue." (*People v. Nelson* (1968), 41 Ill. 2d 364, 366, 243 N.E.2d 225, 226.) As was also noted by our supreme court:

> "The purpose of this rule is apparent. Requiring defendant's written motion for a new trial to specify the errors allegedly entitling him to a new trial may save the delay and expense inherent in an appeal in those instances where the motion is meritorious. Additionally, it focuses the attention of the trial judge upon those aspects of the proceedings of which the defendant complains, and gives to the reviewing court the benefit of the judgment and observations of the trial court with reference thereto." (*People v. Irwin* (1965), 32 Ill. 2d 441, 443-44, 207 N.E.2d 76, 78.)

We believe the defendant's motion for a new trial, although it incorrectly identified the witness and did not use the word "hearsay," was sufficient in particularity to inform the trial judge that the testimony as to the out-of-court identification of the defendant was the subject of the objection.

This brings us to the main issue, that is, whether the testimony concerning Rollins' out-of-court identification of the defendant constitutes reversible error. The State's response to this argument is twofold: (1) that the evidence was properly admitted for the limited

purpose of showing why the arresting officers acted as they did; and (2) that even if improperly admitted, the error was harmless due to Andrelewicz's identification together with "other corroborative circumstances."

The State cites *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364, and *People v. Byrd* (1976), 43 Ill. App. 3d 735, 357 N.E.2d 174, in its argument that the hearsay identification was properly admitted for the purpose of describing "investigatory procedure." In *Coleman* the court admitted a police officer's testimony that he had had a conversation with a particular witness and had then proceeded to the hospital where the defendant was found and arrested. The appellate court affirmed the conviction, noting that the officer "did not testify to the substance of the conversation, but merely to the fact that a conversation took place. As such, both the fact of the conversation and his subsequent conduct were within his personal knowledge and competent as testimony of the officer's investigatory procedure." (17 Ill. App. 3d 421, 427, 308 N.E.2d 364, 369.) *Byrd* is relied upon for the rationale supporting the *Coleman* holding:

> "The State must be permitted to make some explanation why a previously unidentified defendant was arrested and shown to the victim of a crime. If this were not permitted defense counsel could play upon it in argument, asking why the defendant—of all the men in the world—was on trial, insinuating that the accused was arrested without reason." 43 Ill. App. 3d 735, 742, 357 N.E.2d 174, 179.

We believe the testimony in this case went well beyond that sanctioned by the *Coleman* court. Gryncewicz was asked during the trial whether Rollins had occasion, in the presence of Gryncewicz, to face the four men who were in the room. Gryncewicz responded in the affirmative, over objection of the defense. The prosecutor then asked "After Dr. Rollins faced the four men in the room, what if anything did you do?" The policeman responded that the defendant was then placed under arrest. Savania was asked by the State if "the man from the pharmacy came over" to his apartment. Over objection, the witness responded in the affirmative. The prosecutor then asked if he identified anybody in the basement. Over objection the witness responded that the defendant had been identified. Finally, on redirect, Bucholz was asked who identified the defendant in the basement apartment. Over objection the witness said Rollins had identified him.

Unlike the *Coleman* case, the testimony here was not limited to "the fact that a conversation took place." The policemen's testimony concerning the fact that they had a conversation with Rollins before proceeding to the apartment where the defendant was found may have

been admissible as explanatory of their "investigatory procedure." The same cannot be said of Savania or Bucholz's testimony to the effect that Rollins had actually identified the defendant in a face-to-face confrontation.

■■ A leading treatise on the law of evidence explains the rationale for the admissibility of testimony describing investigatory procedures:

> "In criminal cases, the arresting or investigating officer will often explain his going to the scene of the crime or his interview with the defendant, or a search or seizure, by stating that he did so 'upon information received' and this of course will not be objectionable as hearsay, but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay." (McCormick, Law of Evidence §248, at 587 (2d ed. 1972).)

Officer Bucholz's and Savania's testimony was likely to be construed by the jury as evidence that an identification of the defendant by Rollins had occurred. This testimony should have been excluded as hearsay.

The final issue is whether the testimony concerning the hearsay identification was harmless error in light of the positive identification of the defendant by Andrelewicz together with the other corroborative circumstances.

The general rule is that evidence of an out-of-court identification is admissible "only if the person who made the out-of-court identification is present, testifies to his prior identification and is subject to cross-examination." (*People v. Ford* (1974), 21 Ill. App. 3d 242, 244, 315 N.E.2d 87, 89.) As expressed by the Illinois Supreme Court, "[t]he fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered." *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741.

■ However, the admission into evidence of an out-of-court identification, while hearsay, does not amount to reversible error *per se*. Reversal will be the result "only when it serves as a substitute for courtroom identification or when it is used to strengthen and corroborate a weak identification. However, if the hearsay testimony is merely cumulative [citations omitted], or is supported by a positive identification and by other corroborative circumstances [citations omitted], it constitutes harmless error." *People v. Coleman* (1974), 17 Ill. App. 3d 421, 428, 308 N.E.2d 364, 369.

We cannot say that the admission of the testimony concerning Rollins' identification of the defendant was harmless. The actual identification by Rollins was mentioned not merely on one occasion, but rather

by at least two witnesses, Bucholz and Savania. Furthermore, the prosecutor himself re-emphasized this testimony in closing arguments by putting Rollins' identification in the same category as Andrelewicz's admissible identification and by apologizing for Rollins' absence at trial. The jury could not help but believe that both identifications were part of the evidence they should consider in determining the defendant's guilt or innocence.

■■ The State urges us to find this error harmless because of the positive identification by Andrelewicz and the other corroborative circumstances. We cannot do so. While Andrelewicz's identification alone may have been sufficient to convince the jury of the defendant's guilt, we cannot ignore the repeated references to Rollins' identification and the effect this may have had on the jury. Additionally, the error was accentuated when the prosecutor referred to the Rollins' identification in his closing argument. (*People v. Turner* (1968), 91 Ill. App. 2d 436, 235 N.E.2d 317.) Finally, we do not believe that the "corroborative circumstances" were so overwhelming as to ameliorate the effect of this error.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.