**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220029-U

Order filed November 7, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 03-22-0029 Circuit No. 20-CM-813 |
| | ) | |
| DAVID LUIS SOTO, | ) ) | Honorable Monique O'Toole, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Hettel and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The evidence was sufficient to find the defendant guilty. (2) No reversible error resulted from the admission of hearsay. (3) The defendant's convictions violated the one-act, one-crime doctrine.

¶ 2    The defendant, David Luis Soto, appeals his convictions for endangering the life or health of a child, arguing that (1) the evidence was insufficient to establish his guilt, (2) the Du Page County circuit court erred by admitting certain hearsay statements, and (3) he was improperly convicted based on the one-act, one-crime doctrine.

¶ 3                                   I. BACKGROUND

¶ 4          The defendant was charged by superseding information with seven counts of endangering the life or health of a child (720 ILCS 5/12C-5(a)(1), (2) (West 2020)). The complaint alleged the defendant left his children unattended near a street with heavy traffic. The defendant waived his right to a jury trial, and the case proceeded to a bench trial.

¶ 5          At trial, the State called Sergeant Andy Stern of the Lombard Police Department, who testified that on June 16, 2020, he responded to Punky's Pub. Stern was informed by dispatch there was an intoxicated individual on the street and that the individual's children were "running free without *** anyone monitoring them." Defense counsel objected to Stern's recitation of the details of the call as inadmissible hearsay, and the objection was overruled.

¶ 6          Stern testified that Punky's Pub was located in the area of Park Avenue and St. Charles Road. A portion of Park Avenue was shut down that day for outdoor seating, but St. Charles Road was open, and traffic was "[f]ree flowing to relatively heavy."

¶ 7          Stern testified that it was early evening on a summer day, and there were approximately 70 to 100 people gathered in the area. There was a restaurant next door to Punky's Pub, and people were eating outside. He and other officers "split up and all went different ways talking to different individuals to find out what was happening." Stern identified the defendant outside Punky's Pub. He appeared to be intoxicated. Stern detected the strong odor of an alcoholic beverage coming from the defendant and described the defendant as "belligerent" and "argumentative." The defendant admitted to consuming alcohol but denied that there was anything to be concerned about with respect to his children.

¶ 8          Stern testified that the defendant was the father of the four children present, N.S., M.S., A.S., and E.S. Defense counsel objected to the characterization of the children as the defendant's

children, and the objection was overruled. The State moved to introduce three birth certificates for N.S., M.S., and A.S. The birth certificates each listed the defendant as the father and indicated that, at the time of the offense, N.S. was four years old, M.S. was three years old, and A.S. was nine months old. Defense counsel objected that Stern was unable to connect the birth certificates to the children he had observed at the scene because there were "no photos on those birth certificates." The objection was overruled.

¶ 9 Stern observed three of the defendant's children, N.S., M.S., and A.S., on the sidewalk between Punky's Pub and the restaurant north of the pub. While Stern was speaking to the defendant, a bystander brought N.S. to the defendant. The defendant picked N.S. up and held him. The defendant then began to argue and yell at Stern and other officers. In the middle of that interaction, the defendant put N.S. down, and N.S. began to run "straight toward St. Charles Road." The defendant did not take any action to stop N.S or express any concern about N.S.'s well-being.

¶ 10 Stern ran after N.S., trying to catch him before he entered the road but a "random person" who was seated outside the nearby restaurant stopped N.S. At that point, N.S. was approximately "15 to 20 feet away from St. Charles Road."

¶ 11 The defendant moved for a directed verdict on all counts, and the court granted the motion on the counts relating to M.S., A.S., and E.S. but denied the motion on the two counts relating to N.S. The parties rested without presenting additional evidence, and the court found the defendant guilty on both counts relating to N.S.

¶ 12 The defendant filed posttrial motions to reconsider, arguing, *inter alia*, that the court erred when it admitted Stern's testimony about the details he received from dispatch and when it allowed Stern to identify the children without proper foundation. The motions were denied. The defendant was sentenced to concurrent terms of 18 months' probation on each count. The defendant appealed.

¶ 13                                II. ANALYSIS

¶ 14        On appeal, the defendant argues (1) the evidence presented at trial was insufficient to prove him guilty beyond a reasonable doubt, (2) the court committed error by admitting hearsay statements, and (3) the defendant's convictions violated the one-act, one-crime doctrine.

¶ 15                          A. Sufficiency of the Evidence

¶ 16        The defendant first argues that the evidence adduced at trial was insufficient to convict him of the offense of endangering the life or health of a child. Specifically, the defendant contends that the State failed to prove (1) N.S. was in danger of suffering physical or mental damage, (2) the defendant possessed the requisite mental state for the offense, and (3) the identity of the victim.

¶ 17        To determine whether the State has proven the defendant's guilt beyond a reasonable doubt, a reviewing court must decide whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000). We will not second-guess the circuit court's determinations or retry the defendant on appeal. *People v. Villareal*, 198 Ill. 2d 209, 231 (2001). Accordingly, we draw all reasonable inferences from the evidence in favor of the prosecution, and we will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or credibility of the witnesses. *People v. Martin*, 2011 IL 109102, ¶ 15. Further, we will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Lundy*, 334 Ill. App. 3d 819, 825 (2002).

¶ 18        The defendant was charged with endangering the life or health of a child under two subsections of the Criminal Code of 2012 (Code). Accordingly, the State was required to prove

the defendant "knowingly: (1) cause[d] or permit[ted] the life or health of a child under the age of 18 to be endangered; or (2) cause[d] or permit[ted] a child to be placed in circumstances that endanger[ed] the child's life or health." 720 ILCS 5/12C-5(a)(1), (2) (West 2020). As in any offense where the defendant is alleged to have harmed a specific person, the State was also required to establish the identity of the victim. See *People v. Espinoza*, 2015 IL 118218, ¶ 20.

¶ 19    When a defendant is charged in the alternative with child endangerment under both subsections 12C-5(a)(1) and (2), evidence of an actual injury is not a required element of either offense. See *People v. Melton*, 282 Ill. App. 3d 408, 417 (1996). Rather, "endangerment" refers to the "potential or possibility of injury." *People v. Collins*, 214 Ill. 2d 206, 215 (2005). A person acts knowingly when he is "consciously aware that his conduct is practically certain to cause the offense defined in the statute." *Melton*, 282 Ill. App. 3d at 417. Knowledge is ordinarily proven through circumstantial evidence, rather than a direct finding of proof. *People v. Penning*, 2021 IL App (3d) 190366, ¶ 19. Intent may be inferred from (1) the defendant's conduct surrounding the act, and (2) the act itself. *People v. Begay*, 377 Ill. App. 3d 417, 421-22 (2007); *People v. Barnes*, 364 Ill. App. 3d 888, 896 (2006).The victim's identity may also be established by circumstantial evidence. *People v. Sullivan*, 48 Ill. App. 3d 555, 560 (1977); *People v. Smith*, 341 Ill. 649, 652 (1930).

¶ 20    Here, the evidence at trial established that the defendant became intoxicated in a public place while his four children were under his care. Stern observed the defendant place N.S., who was four years old, near a busy roadway, then fail to react when N.S. ran straight toward traffic. Taking the evidence in the light most favorable to the State, a reasonable trier of fact could have found the defendant knowingly (1) endangered N.S.'s life, and (2) caused N.S. to be placed in circumstances that carried the potential or possibility of injury. See *Penning*, 2021 IL App (3d)

5

190366, ¶ 25 (the decision to use heroin while caring for a child exposed the child to numerous dangers, including neglect, an increased likelihood that the child will use drugs, providing access to drugs, violent behavior by the drug user, loss of consciousness by the drug user, impaired driving by the drug user, and ingestion of drugs by the child); *People v. Jordan*, 218 Ill. 2d 255, 271 (2006) (leaving a child unattended in a public place exposed her to unacceptable risks of harm from passersby).

¶ 21        The defendant asserts he had left his children in the care of his friends and was therefore unaware of the dangers they did or did not face. However, the mere presence of another adult who has no duty to remain and watch the child does not relieve the defendant of his obligation to avoid endangering a child in his care. See *Penning*, 2021 IL App (3d) 190366, ¶ 26 (the presence of another adult does not eliminate the dangers resulting from drug use). Further, N.S. was specifically in the defendant's care when a stranger brought N.S. to the defendant, and the defendant put him down near a busy roadway.

¶ 22        Given the defendant's state of intoxication and his failure to react to the dangers faced by N.S., including traffic on a busy roadway, a reasonable trier of fact could infer that the defendant knowingly endangered N.S. In reaching this conclusion, we reject the defendant's contention that Stern improperly testified to N.S.'s identity. The State's obligation in establishing the victim's identity is not to prove how the witness knows a person's identity, but to prove whether the person named in the charging instrument is the same person described by the evidence. See, *e.g.*, *Shepherd v. People*, 72 Ill. 480, 481 (1874). Stern credibly testified to N.S.'s identity based on his observations at the scene. N.S.'s identity and his relationship to the defendant are further confirmed by the circumstantial evidence that when N.S. was picked up and held by the defendant he did not

react as if the defendant was a stranger. We therefore find that the evidence was sufficient to find the defendant guilty of endangering the life or health of N.S.

¶ 23                                    B. Admission of Hearsay Statements

¶ 24        The defendant next alleges he was denied a fair trial when the circuit court admitted improper hearsay evidence. Specifically, the defendant points to two instances: (1) Stern's recitation of the dispatch call describing unattended children belonging to an intoxicated individual, and (2) Stern's identification of N.S. as one of the children referred to in the call.[1]

¶ 25        Hearsay is generally inadmissible. Ill. R. Evid. 802 (eff. Jan. 1, 2011). Hearsay consists of an out-of-court statement offered to show the truth of the matter asserted. *People v. Johnson*, 199 Ill. App. 3d 577, 582 (1990). We review the improper admission of hearsay for an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.*

¶ 26        As part of their investigations, officers are frequently required to speak to witnesses and gather information. A police officer may testify about the steps taken in investigating a crime and describe the events leading up to an arrest when the evidence satisfies some relevant nonhearsay purpose. *People v. Jura*, 352 Ill. App. 3d 1080, 1086 (2004). Such testimony is not hearsay because it is not offered to establish the truth of the matter asserted; instead, it is offered to explain what investigation was undertaken and may not be used as evidence of the defendant's guilt. *Id.* at 1088. Although the inference to be drawn from such testimony might be that the information received

---

[1] We note initially that the parties believed the hearsay issues to be forfeited. However, our review of the record indicates that the defendant objected to both instances of hearsay at trial and filed a posttrial motion arguing that the court erred in admitting both statements. Accordingly, we hold that these issues are not forfeited and are instead properly preserved. See *People v. Russell*, 385 Ill. App. 3d 468, 472 (2008).

motivated the officer's subsequent conduct, it is nonetheless not hearsay because it is drawn from the officer's personal knowledge. *People v. Gacho*, 122 Ill. 2d 221, 248 (1988). However, officers may not testify to the substance of such conversations or go beyond explaining the investigative steps they undertook in response. *Jura*, 352 Ill. App. 3d at 1086.

¶ 27     In this case, Stern testified that he received a dispatch call regarding an intoxicated individual in the street and unattended children in the area. The defendant claims that Stern's testimony about the contents of the call was inadmissible hearsay, and the court erred by allowing its admission. We agree.

¶ 28     The dispatch call described the charged offense, and Stern should not have been permitted to relate the substance of that description. See *id.* (holding that officers should not have been permitted to relate the description of the offender they received from dispatch); *People v. Warlick*, 302 Ill. App. 3d 595, 600 (1998) (finding that an officer's testimony that he received a call for a "burglary in progress" was inadmissible hearsay); *People v. Thomas*, 199 Ill. App. 3d 79, 99 (1990) (holding that a dispatch call informing an officer of an "intoxicated driver" was inadmissible in a driving while under the influence of alcohol case).

¶ 29     However, the erroneous admission of hearsay will not be held reversible error if there is no reasonable probability the trier of fact would have acquitted the defendant had the hearsay been excluded. *Warlick*, 302 Ill. App. 3d at 601. In a bench trial, the court is presumed to have considered only admissible evidence and discarded inadmissible evidence. *People v. Robinson*, 30 Ill. 2d 437, 439 (1964). Upon reviewing the record, we find it unlikely the court relied on the impermissible hearsay in reaching its verdict.

¶ 30     We find it significant that the court granted the defendant's motion for a directed verdict on all counts related to the defendant's three other children. The only two counts of which the

8

defendant was convicted were based on acts personally observed by Stern and not acts described to Stern in the dispatch call. The court's findings were entirely consistent with disregarding the substance of Stern's testimony about the dispatch call and ruling solely on the actions observed by Stern at the scene. As a result, we find the admission of the hearsay in question was harmless error. See *People v. Pryor*, 181 Ill. App. 3d 865, 870 (1989) (the admission of hearsay evidence is harmless error where there was uncontroverted eyewitness testimony from the officer).

¶ 31  The defendant next claims that Stern's identification of N.S. amounted to inadmissible hearsay because it was based on an "undisclosed source" identifying the defendant's children. The defendant's claim misconstrues the hearsay prohibition. Hearsay involves the testimony of a witness to an out-of-court statement by an out-of-court declarant. *People v. Dunmore*, 389 Ill. App. 3d 1095, 1106 (2009). In this case, Stern made no reference to an out-of-court declarant, out-of-court conversation, or any out-of-court statements. Instead, Stern testified to knowledge he personally obtained during his investigation.

¶ 32  Where an officer testifies to information within his personal knowledge, such statements are not hearsay. *People v. Jordan*, 282 Ill. App. 3d 301, 306 (1996). Officers routinely identify individuals through investigation, and such identifications do not amount to hearsay so long as they fall within the officer's personal knowledge and do not recount the substance of an out-of-court conversation. See, *e.g.*, *People v. Davison*, 2019 IL App (1st) 161094, ¶ 32 (finding it was not hearsay for an officer to identify the defendant in court after having spoken to a nontestifying witness who named the defendant as a possible suspect). Because Stern was testifying to information personally known to him, his identification of N.S. was not impermissible hearsay, and the court did not abuse its discretion in overruling the defendant's objection to Stern's identification of N.S.

¶ 33                    C. One-Act, One-Crime Doctrine

¶ 34        Finally, the defendant contends that his convictions violate the one-act, one-crime doctrine because the same act resulted in two convictions. The State contends that the evidence established the defendant committed two separate acts, first by allowing N.S. to roam freely near St. Charles Road, and then by failing to chase after N.S. after he ran toward the road while the defendant was speaking with Stern and other officers.

¶ 35        The one-act, one-crime doctrine prohibits convictions based on the same physical act or acts. *People v. Artis*, 232 Ill. 2d 156, 161 (2009). We review a violation of the one-act, one-crime doctrine *de novo*. *Id.* When two or more convictions are based on a single act, a sentence should be imposed on the more serious offense and the less serious offense should be vacated. *Id.* at 170. In determining which offense is more serious, courts compare the relative punishments prescribed by the legislature, and, where the punishments are identical, the mental states required to commit each offense. *Id.* Where it cannot be determined which conviction is more serious, the cause will be remanded to the circuit court for that determination. *Id.* at 177.

¶ 36        As we have discussed previously, the evidence suggesting the defendant failed to supervise his children prior to the arrival of the officers was not relied upon by the court in reaching its decision. The defendant's failure to attend to N.S. was the "act" that formed the basis of the defendant's two convictions. We therefore find that the defendant's convictions under both sections of the statute violate the one-act, one-crime doctrine.

¶ 37        The sentences prescribed by the legislature for a violation of subsections 12C-5(a)(1) and (2) of the Code are identical. See 720 ILCS 5/12C-5(a)(1), (2) (West 2020). The mental state required to commit each offense is likewise identical. Because we are unable to determine which of the two offenses is more serious for the purposes of the one-act, one-crime doctrine, we remand

this case to the circuit court to make that determination. See *Artis*, 232 Ill. 2d at 177. The circuit court is directed to determine which offense is more serious, vacate the less serious offense, and resentence the defendant on the more serious offense.

¶ 38                                III. CONCLUSION

¶ 39        The judgment of the circuit court of Du Page County is affirmed in part and remanded with instructions.

¶ 40        Affirmed in part and remanded with instructions.